UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **Timothy Jackson**, <br><br> Plaintiff, <br><br> v. <br><br> **Laura Wright**, **Milton B. Lee**, **Melisa Denis**, **Mary Denny**, **Daniel Feehan**, **A.K. Mago**, **Carlos Munguia**, and **G. Brint Ryan**, each in their official capacities as members of the Board of Regents for the University of North Texas System; **Rachel Gain**; **Ellen Bakulina**; **Andrew Chung**; **Diego Cubero**; **Steven Friedson**; **Rebecca Dowd Geoffroy-Schwinden**; **Benjamin Graf**; **Frank Heidlberger**; **Bernardo Illari**; **Justin Lavacek**; **Peter Mondelli**; **Margaret Notley**; **April L. Prince**; **Cathy Ragland**; **Gillian Robertson**; **Hendrik Schulze**; **Vivek Virani**; and **Brian F. Wright**, Defendants. | Case No. 4:21-mc-132-ALM |

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO QUASH**

Plaintiff Timothy Jackson respectfully submits this Response in Opposition to Defendants' Motion to Quash Subpoenas and Motion for Protective Order (ECF No. 1).

**I.    INTRODUCTION**

Defendants make two arguments to forestall discovery.  First, Defendants claim the discovery served which is well within the Federal Rules of Civil Procedure (seven Rule 45 subpoenas (4:21-MC-1320-ALM, ECF No. 2-4) of direct witnesses to the acts and omissions in the above-caption case) is unduly burdensome.  Defendants do not dispute that the witnesses are relevant in the above-caption case.

1

Next, Defendants recycle their argument that they have sovereign immunity.

Neither argument has merit, and the Court should deny Defendants' motion.

II.   ARGUMENT

A.   **The Discovery Sought Is Relevant and Not Unduly Burdensome**

Protesting the "undue burden" of discovery requests is, in itself, inadequate without a showing that the burden is disproportionate to the relevance of the information sought. See e.g., *Cunningham v. Concentrix Sols. Corp.*, Civil Action No. 4:20-cv-661, 2021 U.S. Dist. LEXIS 48667, at *13 (E.D. Tex. Mar. 16, 2021) ("objecting as 'overly broad, burdensome, oppressive and irrelevant,' without showing 'specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive,' is inadequate."  Nowhere does the State make an argument that the discovery sought is irrelevant to Professor Jackson's claims.

Instead, Defendants chief complaint is that they must produce documents in Fort Worth rather than Denton.  It cannot be seriously questioned that Plaintiff may serve subpoenas designating the place of compliance "within 100 miles of where the [witness] resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1)(A). The designated place of compliance in Fort Worth is within 100 miles of where all witnesses reside.

Furthermore, Defendants admit that they have already complied by producing documents (mostly in compliance with mandatory disclosure ordered by this Court on April 1, 2021 (ECF No. 14)).  This was not unduly burdensome, and it will not be unduly burdensome to comply with Plaintiff's Rule 45 subpoenas.

Defendants also fail to inform the Court that witnesses in the above-captioned case, including non-party witnesses, have already appeared for deposition in Dallas, Texas from May 18-19, 2021, at Cutler-Smith, P.C., 12750 Merit Dr Ste 1450, Dallas, TX  75251, which is within the jurisdiction of the Northern District of Texas.  This was not materially farther from Denton, Texas than the designated place of compliance for the disputed Rule 45 subpoenas in Fort Worth, Texas.  Neither the witnesses nor counsel for Defendants was heard at that time to dispute the alleged "burden" of appearing to give live testimony or produce documents in the jurisdiction of the Northern District of Texas.

Defendants also make no argument disputing the relevance of the discovery Plaintiff seeks.  In fact, the discovery from university witnesses has already proven probative.  By way of example, on May 19, 2021, Defendant Frank Heidlberger, Professor of the University of North Texas, appeared at the designated location in Dallas, Texas to produce documents and give live testimony under oath.  Defendant Heidlberger edits a Journal at the University of North Texas Press called *Theoria*, which is parallel to Timothy Jackson's former Journal of Schenkerian Studies that the University of North Texas now suppresses.

One of the pretextual criticisms of Plaintiff Professor Jackson is that he committed "editorial mismanagement" by publishing articles critical of a City University of New York Professor Philip Ewell without peer review.  Yet Professor Heidlberger testified that his journal publishes articles without peer review, in particular an article by Philip Ewell.  At the University of North Texas, it is perfectly acceptable to publish Philip Ewell without peer review, but it is not acceptable to publish viewpoints critical of Philip Ewell without peer review.

3

Another criticism of Professor Timothy Jackson is that he sinned against editorial ethics by directly soliciting articles critical of Philip Ewell.  Yet Professor Heidlberger admitted that he solicited Professor Ewell's article for his Journal *Theoria*.  So the act of editorial solicitation is not "unethical" at the University of North Texas so long as it does not lead to publication of viewpoints that the University wishes to censor.

Finally, Timothy Jackson is accused of "conflict of interest" for publishing his own article in the Journal of Schenkerian Studies, while simultaneously serving on the editorial staff.  Again, Professor Heidlberger testified that he has published articles in his own Journal, *Theoria*, without any concern for conflict of interest.

The only difference, in other words, is UNT's desire to repress the viewpoints Professor Jackson published in the Journal of Schenkerian Studies.  There has been no criticism, let alone an "ad hoc panel" convened to investigate Professor Heidlberger's journal, Theoria.  Obviously, the so-called standards of "editorial ethics" that UNT purports to espouse (suddenly and only in response to a Twitter mob following the July 25, 2020 publication of Volume 12 of the Journal of Schenkerian Studies) do not apply to fawning praise of Professor Ewell.  UNT's standards only apply as a pretext for censorship of viewpoints critical of Professor Ewell.

As to Defendants' remaining argument that University of North Texas in-house counsel Reynaldo Stowers must review documents for potentially privileged information, Defendants are simply complaining about the ordinary obligations of discovery.  They provide no authority whatsoever as to why these obligations are unduly burdensome.

Defendants' Motion to Quash on the grounds of undue burden should therefore be denied.

### B.  There Is No Sovereign Immunity

Defendants reprise their argument on sovereign immunity raised in the Motion to Dismiss.  4:21-cv-33-ALM, ECF No. at 16-19.  They argue:

- sovereign immunity (or 11th Amendment immunity) is a jurisdictional bar that prevents discovery; and

- Plaintiff lacks standing due to unredressable injuries.

4:21-cv-33-ALM, ECF No. 18 at 3-5.  In addition, Defendants seek to shield the Defamation Defendants from discovery, although the State presents no legal authority for doing so. Defendants have already conceded that these parties can assert no sovereign immunity.  Id. at 5.

Defendants' sovereign-immunity objections are meritless.  First, the State argues that Professor Jackson does not seek prospective relief.  Yet Professor Jackson seeks prospective relief to enjoin an ongoing violation of his First Amendment rights.  UNT continues to censor him.  See Complaint (ECF No. 1) at ¶ 76(ii) (asking the Court to "enjoin the members of the Board of Regents, along with their employees and subordinates, from taking any adverse action against Professor Jackson in response to the publication of the symposium or his criticisms of Professor Ewell").

The relief Professor Jackson seeks therefore falls squarely within the *Ex parte Young* exception to sovereign immunity.  See *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" (citation omitted)); *Raj*

*v. Louisiana State University*, 714 F.3d 322, 328 (5th Cir. 2013) ("[T]he Eleventh Amendment does not bar suits for injunctive or declaratory relief against individual state officials acting in violation of federal law.").

The Defendants try to escape *Ex parte Young* by denying that the Board defendants are "proper defendants." Mot. to Dismiss (ECF No. 8) at 17; Motion to Stay (ECF No. 18 at 4). But an *Ex parte Young* lawsuit requires only that a defendant have "some connection" with the enforcement of the challenged policy or practice, and the Board defendants easily meet this test. The Regents, acting in their official capacity, "possess[] the authority to reinstate" Professor Jackson according to the relief requested, which Defendants cannot dispute. Indeed, if Professor Jackson had not joined the Regents in their official capacity, the State would no doubt argue for dismissal because he had failed to join them rather than lower-level administrators. See *Liu v. Tex. State Univ.*, No. A-18-CV-00938-LY, 2019 U.S. Dist. LEXIS 136197, at *13 (W.D. Tex. Aug. 12, 2019) (dismissing claims for reinstatement against individual non-board defendants of Texas state university in their official capacity because none of the lower-level administrative defendants in that suit had the ultimate authority to grant the relief sought); see also, *Amawi v. Pflugerville Indep. Sch. Dist.*, 373 F. Supp. 3d 717, 740 (W.D. Tex. 2019), *vac. as moot on other grounds sub nom.*, *Amawi v. Paxton*, 956 F.3d 816 (5th Cir. 2020) (defendants properly sued board defendants in their official capacities in First Amendment suit to enjoin University of Houston and Texas A&M University System, among other state schools, noting universities did "not contest that sovereign immunity does not extend to the individual members of the Boards" and "suits against the individual members of the Boards" properly fall within *Ex parte Young* exception).

Defendants complain that Professor Jackson "pleads no facts to show that the Board Defendants have any role with the Journal or the Panel's review and recommendation, nor whether campus officials acted on those recommendations." Id. at 17.  But Professor Jackson is not required to make any "showing" of this sort.  The Board of Regents, as the governing authority of the university, by definition has "some connection" to the retaliatory actions that Professor Jackson has alleged, because the Board of Regents has the authority to oversee and countermand the decisions of university officials.

The situation is no different from a lawsuit challenging a public university's affirmative-action programs, which is properly brought against the individual regents even when the challenged policies are made and implemented by lower-level university officials. See *Fisher v. Univ. of Tex. at Austin*, 758 F.3d 633, 637 (5th Cir. 2014).  The defendants do not even acknowledge the "some connection" test from *Ex parte Young*, let alone explain how the Board defendants fail to satisfy that standard.

Defendants also claim that Professor Jackson fails to allege an "ongoing violation" of federal law.  They insist that he "alleges only past injuries." ECF No. 18 at 4.  That is flatly wrong.  Professor Jackson's banishment from the Journal is an ongoing injury that will continue absent relief from this Court.  The initial decision to exclude Professor Jackson from the Journal was made in the past, but the implementation of that decision will continue indefinitely into the future unless the university changes its stance.  That is all that Professor Jackson needs to allege an "ongoing" violation of federal law.  That the decisions to exclude Professor Jackson were made in the past does not mean that his injuries are confined exclusively to the past.  The situation is no different from a President who decides to exclude travelers from designated foreign countries from entering the United States.

7

The affected individuals still have standing to challenge the implementation of that past

decision and seek prospective relief against its enforcement, even though they are

challenging the legality of a past decision.  See *Trump v. Hawaii*, 138 S. Ct. 2392, 2415–16

(2018).

Professor Jackson alleges that the university is currently excluding him from the

Journal on account of his past criticisms of Philip Ewell.  Again, this is all that is needed to

allege an ongoing violation of federal law.  And it is also entirely proper for Professor

Jackson to seek a prohibition against all "adverse actions" taken in response to his

criticisms of Philip Ewell; otherwise the university and its officials could evade an

injunction from this Court by retaliating against Professor Jackson in other ways.

The defendants further claim that Professor Jackson "does not allege facts to show

any ongoing or future injury."  ECF No. 18 at 4.  But that is transparently false.  Paragraph

60 of the complaint states:

> On December 11, 2020—more than a week before the deadline that the
> provost had imposed—Dr. Benjamin Brand (Professor Jackson's
> department chair) informed Professor Jackson that he would be removed
> from the Journal and that the university would eliminate resources
> previously provided to the Journal and Center for Schenkerian Studies.

Complaint (ECF No. 1) at ¶ 60.  Professor Jackson's "remov[al] from the Journal" and the

university's intent to "eliminate resources previously provided to the Journal and Center

for Shenkerian Studies" describe ongoing and future injuries.

Professor Jackson's banishment from the Journal will continue into the future unless

it is enjoined by this Court, and the university will eliminate future resources for the

Journal and Center for Shenkerian Studies absent judicial intervention.  All of these

allegations must be assumed true at this stage of the litigation.  They indisputably describe

continuing and future injuries that confer standing to seek prospective relief.  See

*Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1927 (2019) ("Because this

case comes to us on a motion to dismiss, we accept the allegations in the complaint as

true").

### III.   CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Quash

Subpoenas and Motion for Protective Order.

Respectfully submitted,

DATE: <u>May 31, 2021</u>          /s/Michael Thad Allen

Michael Thad Allen, Esq.
D. Conn. Bar No. CT29813
admitted *pro hac vice*
Lead Attorney
ALLEN LAW, LLC
PO Box 404
Quaker Hill, CT  06375
(860) 772-4738 (phone)
(860) 469-2783 (fax)
m.allen@allen-lawfirm.com

Jonathan Mitchell
Texas Bar No. 24075463
MITCHELL LAW PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

for PLAINTIFF

### CERTIFICATE OF SERVICE

I hereby certify that on the date specified in the caption of this document, I electronically
filed the foregoing with the Clerk of Court, to be served on all parties of record via the
CM/ECF system.

/s/Michael Thad Allen
Michael Thad Allen